SUPREME COURT.   New-York General Term, September, 1856.
*Roosevelt, Clerke* and *Whiting,* Justices.

## THE PEOPLE *v.* ABRAHAM BOGART, Jr.

On the trial of a police justice of the city of New-York, for having willfully taken bail of and discharged from custody a person committed on a charge of larceny by another magistrate, without notice given to the district attorney, as required by the *Session Laws of* 1846 (*p.* 408), it is competent for the prosecution to prove that, after such bail had been taken, search was made for the surety in the recognizance at the place of his alleged residence, and at other places, and that he could not be found.

If a police justice, in the city of New-York, willfully and intentionally take bail and discharge from custody a person committed on a criminal charge by another magistrate, without the notice to the district attorney required by the act of 1846, and without having before him the papers required by that act, he is guilty of a misdemeanor, under the provisions of 2 *Revised Statutes,* 696,° § 39.

A police justice, in the city of New-York, acquires no jurisdiction, and has no authority to take bail and discharge from custody, till the preliminary steps required by the act of 1846 have been duly taken, and until such steps are taken his acts in taking bail and discharging from custody are not judicial acts, and cannot be protected as such.

In an indictment of a police justice for such an offence, it is not necessary to prove that the act was done corruptly. The statute is violated and the penalty incurred, if the act be done intentionally.

" Straw bail," defined by the city judge in his charge to the jury.

Form of a writ of *certiorari* to remove a cause from the Court of General Sessions of the Peace of the city of New-York, to the Supreme Court, after verdict and before sentence.

Form of an indictment against a justice of the peace for a misdemeanor, in willfully admitting a prisoner to bail, in the city of New-York, without notice to the district attorney, in a case in which the defendant was not the committing magistrate.

Form of a commitment, by the recorder of New-York, of a person indicted in the Court of General Sessions for grand larceny.

Form of a commitment, by a police justice, of a person charged before him with grand larceny.

Form of a recognizance, taken by a police justice, to appear and answer to an indictment, in the Court of General Sessions, and of a justification by the surety in the recognizance.

Form of a recognizance, taken by a police justice, on a charge made before him of grand larceny.

THIS cause was brought up on a writ of *certiorari*, of which the following is a copy.

The People of the State of New-York, to the judges of the Court of General. Sessions of the Peace, in and for the city and county of New-York, greeting :

We, being willing for certain causes to be certified, as well of a certain indictment, plea, with the bill of exceptions, verdict, and other proceedings thereon before you, against Abraham Bogart, Jr., at the suit of the people of the State of New-York, on a charge of misdemeanor done and committed by the said Abraham Bogart, Jr., command you, that you send to our Supreme Court of judicature of the people of the State of New-York, to be held at the City Hall, in the city of New-York, on the first Monday in May next, the indictment, plea, verdict and bill of exceptions, aforesaid, and other proceedings thereon, with all things touching the same, as fully and entirely as they remain before you, by whatsoever name the parties may be called therein, together with this writ, that our said court may further cause to be done thereupon what of right our said court shall see fit to be done.

Witness, James I. Roosevelt, Esq., presiding justice of our [L. S.] said court, at the City Hall, in the city of New-York, the twenty-second day of April, in the year one thousand eight hundred and fifty-six.

[*Per curiam.*]          RICHARD B. CONNOLLY, *Clerk.*
A. OAKEY HALL, *District Attorney.*

By the return to the writ it appeared an indictment, of which the following is a copy, had been found in the court below :

*City and County of New-York, ss :*

The jurors of the people of the State of New-York, in and for the body of the city and county of New-York, upon

The People *v.* Bogart.

their oath, present : That Abraham Bogart, late of the first ward of the city of New-York, in the county of New-York, aforesaid, junior, on the twenty-eighth day of July, in the year of our Lord one thousand eight hundred and fifty-five, at the ward, city and county aforesaid, with force and arms, acted as and was, and yet acts and is, one of the police justices for the city of New-York. That he, the said Abraham Bogart, Jr., as police justice as aforesaid, was prohibited by law from letting to bail any person charged with a criminal offence in any case wherein he, the said Abraham Bogart, Jr., was not the committing magistrate, unless notice of the application to bail such person should have been given to the district attorney of the city and county of New-York at least two days before such application, specifying the name, the officer, the time and place when and where such application would be made, and the name and residence of the proposed bail, and the original commitment, and proofs upon which it was founded, should have been presented to him, as fully appears by the eighth section of an act passed May thirteenth, one thousand eight hundred and forty-six, entitled "An act to amend an act entitled ' An act for the establishment and regulation of the police of the city of New-York,' " passed May the seventh, one thousand eight hundred and forty-four, and in the words following : " No officer other than the committing magistrate shall let to bail any person charged with a criminal offence, unless notice of the application to bail such person shall have been given to the district attorney of the city and county of New-York at least two days before such application, specifying the name of the officer, the time and place when and where such application will be made, and the name and residence of the proposed bail, and the original commitment and proofs upon which it is founded shall have been presented to the officer to whom the application for bail is made. The person having the custody of such commitment and proofs shall, when required in writing, produce the same before the officer last mentioned."

That while such law was in force and in effect, one William Nambe, otherwise called William Lambe, was indicted in the Court of General Sessions of the Peace in and for the said city and county of New-York, on the fourth day of April, one thousand eight hundred and fifty-five, for the crime of grand larceny, in feloniously stealing, taking and carrying away the goods, chattels and personal property of one James E. Miller, and thereafter, on such indictment, was committed to the custody of the keeper of the city prison, to await his trial on such indictment by a magistrate of the city and county of New-York, viz., James M. Smith, Jr., Esq., recorder of the city of New-York. That whilst the said William Nambe, otherwise called William Lambe, stood committed, as aforesaid, by the said James M. Smith, Jr., Esq., recorder as aforesaid, the said Abraham Bogart, Jr., well knowing such law aforesaid, with force and arms, at the ward, city and county aforesaid, on the twenty-eighth day of July, in the year of our Lord one thousand eight hundred and fifty-five, did, willfully, unlawfully, maliciously and corruptly, admit to bail said William Nambe, otherwise called William Lambe, as appears by the said recognizance, to answer then and there, by the said Abraham Bogart, Jr., police justice, taken in the words and figures following, to wit:

*City and County of New-York, ss;*

Be it remembered, that on the twenty-eighth day of July, one thousand eight hundred and fifty-five, William Nambe, *alias* Lambe, of number     , Brooklyn, Nassau-street, in the city of New-York, and Joseph Porkousky, of number two hundred and ninety-eight Houston-street, in the said city, personally came before me, the undersigned, one of the police justices in the city of New-York, and acknowledged themselves to owe to the people of the State of New-York, that is to say, the said William Nambe, *alias* Lambe, the sum of ten hundred dollars, and the said Joseph Porkousky the sum of ten hundred dollars, separately, of good and lawful

The People *v.* Bogart.

money of the State of New-York, to be levied and made of their respective goods and chattels and tenements, to the use of said people, if default shall be made in the condition following, viz.: Whereas, the said William Nambe, *alias* Lambe, was indicted in the Court of General Sessions, for having committed the crime of grand larceny in the city and county aforesaid; and whereas he has been brought before said justice to answer said charge, and upon the examination of the whole matter, pursuant to statute, it appearing to said justice that said offence has been committed, and there is probable cause to believe said defendant to be guilty thereof, and the said offence being bailable by said justice, he did thereupon order the said defendant do find sufficient bail in the sum of ten hundred dollars to answer to any indictment to be preferred against him for said offence: Now, therefore, the condition of this recognizance is such, that if the abovenamed William Nambe, *alias* Lambe, shall personally appear at the next Court of General Sessions, to be held in said city and county on the first Monday of August next, to answer any indictment that may be preferred against him for said offence, and abide the order of the said court, and not depart therefrom without leave, then this recognizance to be void, otherwise to remain in full force.

WILLIAM LAMBE,<br>JOSEPH PORKOUSKY.

Taken and acknowledged before me, }
 this day and year aforesaid.  }

A. BOGART, Jr., *Police Justice.*

*City and County of New-York, ss:*

 *Joseph Porkousky,* the within named bail, being duly sworn, says, that he is a householder in said city, and is worth ten hundred dollars over and above the amount of all his debts and liabilities, and that his property consists of three lots of land in Morrisania, valued at fifteen hundred dollars, and

stock in trade insured for two thousand dollars in the City Insurance Office in this city.

JOSEPH PORKOUSKY.

Sworn before me this 28th ⎱
   day of July, 1855. ⎰

      A. BOGART, Jr., *Police Justice.*

And then and there, after such recognizance being taken by him, did discharge from custody the said William Nambe, otherwise called William Lambe, he, the said Abraham Bogart, Jr., then and there well knowing that the said William Nambe, otherwise called William Lambe, then and there stood committed, as aforesaid, by the said James M. Smith, Jr., Esq., recorder, as aforesaid, and that he, the said Abraham Bogart, Jr., was not the committing magistrate, and then and there well knowing that no notice of the application to bail said William Nambe, otherwise called William Lambe, had been given to the district attorney of the city and county of New-York, and that the proofs upon which said commitment was founded had not been presented to him, the said Abraham Bogart, Jr., police justice, as aforesaid, upon said application to bail. And the jurors aforesaid do say, that notice of the application to bail said William Nambe, otherwise called William Lambe, had not been given to the district attorney of the city and county of New-York, and that the proofs upon which the commitment was founded had not been presented to the said Abraham Bogart, Jr., police justice, as aforesaid, upon said application to bail.

Wherefore the jurors aforesaid, upon their oaths aforesaid, do say, that the said Abraham Bogart, Jr., police justice, as aforesaid, did, willfully, maliciously, unlawfully and corruptly, an act prohibited by law, against the form of the statute in such case made and provided, and against the peace of the people of the State of New-York and their dignity.

      A. OAKEY HALL,
        *District Attorney.*

The People *v.* Bogart.

The defendant pleaded not guilty, and the issue so joined came on to be tried on the 6th day of February, 1856, in the Court of General Sessions, before Elisha S. Capron, city judge, and a jury.

*John S. Magnus*, on behalf of the prosecution, testified as follows: I was present July 28th, 1855, when Justice Bogart, acting as police justice, bailed William Nambe; it was about eleven o'clock in the morning; the bail was taken in the large room; the justice requested me to write out the recognizances; the prisoner was not there; the man who went bail was there; there was a number of persons present; I cannot now say who they were; there were two commitments, as follows:

*City and County of New-York, ss:*

By James M. Smith, Jr., Esq., the recorder for the city of New-York, to the policemen and constables of the said city, and every of them, and to the keeper of the city prison of the said city:

These are, in the name of the people of the State of New-York, to command you, the said policemen and constables, and every of you, to convey to the said prison the body of William Nambe, *alias* Lambe, and deliver him to the keeper thereof; and you, the said keeper, are hereby commanded to receive into your custody, in the said prison, the body of the said Nambe, *alias* Lambe, who stands indicted in the Court of General Sessions with having committed the crime of grand larceny, in the city and county aforesaid; and that you safely keep the said Nambe, *alias* Lambe, in your custody, in the said prison, until he shall find sureties to answer the said charge in the sum of ten hundred dollars, or shall be thence delivered by due course of law.

Given under my hand and seal, at the new City Hall, in [L. S.] the said city, this eighteenth day of July, one thousand eight hundred and fifty-five.

JAMES M. SMITH, Jr., *Recorder.*

*City and County of New-York, ss:*

By Abraham Bogart, Jr., Esq., one of the police justices in and for the city of New-York, to the constables

[L. s.]    and policemen of the said city, and every of them, and to the keeper of the city prison of the said city:

These are, in the name of the people of the State of New-York, to command you, the said constables and policemen, and every of you, to convey to the said prison the body of William Nambe, *alias* Lambe, *alias* William Lawson, and deliver him to the keeper thereof; and you, the said keeper, are hereby commanded to receive into your custody, in the said prison, the body of the said William Lawson, who stands charged before me, on oath of Benjamin F. Weymouth, with having, on the seventeenth day of July, one thousand eight hundred and fifty-five, at the city of New-York, in the county of New-York, feloniously taken, stolen and carried away, from the pocket of said Weymouth, and his property, one portemonnaie, containing bank bills and gold coin, value in all of fifty-one dollars; and that you safely keep the said William Lawson in your custody, in the said prison, until he shall find surety in the sum of ten hundred dollars to answer said complaint, or be thence delivered by due course of law.

Given under my hand and seal, this eighteenth day of July, one thousand eight hundred and fifty-five.

A. BOGART, Jr., <i>Police Justice.</i>

The witness continued: The prisoner was sent for, but I did not see him; the man who offered bail was sworn to answer such questions as might be put to him touching his property; he was asked by Judge Bogart for his reference; he said he was acquainted with Alderman Francis, of the tenth ward; there was no counsel representing the prisoner that I knew; I was not there when application for bail was made; I do not know what occurred before I was there.

The People *v.* Bogart.

The said two commitments were then read in evidence by the district attorney, and also the recognizances, as follows:

The district attorney then read in evidence a recognizance, with an affidavit of justification annexed, in the same words and figures as in the copy set forth in the indictment.

The district attorney next read in evidence a recognizance, with an affidavit annexed, of which the following is a copy:

*City and County of New-York, ss:*

Be it remembered, that on the twenty-eighth day of July, in the year of our Lord one thousand eight hundred and fifty-five, William Nambe, *alias* Lambe, *alias* William Lawson, of number —, ———— street, in the city of New-York, and Joseph Porkousky, of number two hundred and seventy-eight Houston-street, in the said city, personally came before the undersigned, one of the police justices in the city of New-York, and acknowledged themselves to owe to the people of the State of New-York, that is to say, the said William Nambe, *alias* Lambe, *alias* William Lawson, the sum of five hundred dollars, and the said Joseph Porkousky the sum of five hundred dollars, separately, of good and lawful money of the State of New-York, to be levied and made of their respective goods and chattels, lands and tenements, to the use of said people, if default shall be made in the condition following, viz.: Whereas the said William Nambe, *alias* Lambe, *alias* William Lawson, was charged before the undersigned police justice, as aforesaid, on the oath of Benjamin F. Weymouth, for having, on the seventeenth day of July, one thousand eight hundred and fifty-five, in the city and county of New-York aforesaid, feloniously taken, stolen and carried away from the pocket of said Weymouth, and his property, one portemonnaie, containing bank bills and gold coin of the value, in all, of fifty-one dollars; and whereas he has been brought before said justice

to answer said charge, and upon the examination of the whole matter, pursuant to statute, it appearing to said justice that said offence has been committed, and that there is probable cause to believe said defendant to be guilty thereof, and the said offence being bailable by said justice, he did thereupon order the said defendant to find sufficient bail in the sum of ten hundred dollars for his appearance at the next Court of General Sessions, to be held in said city and county, to answer to any indictment to be preferred against him for said offence : Now, therefore, the condition of this recognizance is such, that if the above named William Nambe, *alias* Lambe, *alias* William Lawson, shall personally appear at the next Court of General Sessions, to be held in said city and county on the first Monday of August next, to answer to any indictment that may be preferred against him for said offence, and abide the order of the said court, and not depart therefrom without leave, then this recognizance to be void, otherwise to remain in full force.

WILLIAM LAWSON.
JOSEPH PORKOUSKY.

Taken and acknowledged before me, }
the day and year aforesaid. }
A. BOGART, Jr., *Police Justice.*

*City and County of New-York ss :*

Joseph Porkousky, the within named bail, being duly sworn, says, that he is a householder in said city, and is worth ten hundred dollars over and above the amount of all his debts and liabilities, and that his property consists of three lots of land in Morrisania, Westchester county, and stock in trade insured in the city of New-York for two thousand dollars, value, in all, thirty-five hundred dollars.

JOSEPH PORKOUSKY.

Sworn before me, this 28th }
day of July, 1855. }
A. BOGART, Jr., *Police Justice.*

The People *v.* Bogart.

. The witness, being *cross-examined* by counsel for defence, further testified: I am now an attorney and counselor in this city; I have been a policeman in the sixth ward; I have been attached to the police about sixteen years; I have known Justice Bogart about twenty-five years; I have been intimate with him all that time; Justice Bogart at the time referred to was attached to the Tombs Police Court; the business there is very large; the magistrates have a crowd around them nearly all the time; they have to use rapid dispatch; I have often written there for the justices; I wrote for them almost every day; there was nothing singular in Justice Bogart asking me to fill up these bonds; I saw as much of the man who offered bail as Justice Bogart did; he looked like a gentleman; I had never seen him before; I have been very intimate with the criminal business of this city; I know the sort of men who become straw bail; I never saw this man before; there was nothing suspicious in. his appearance; they are sometimes very short of clerks at the Tombs Court, and there is nothing unusual for others, like myself, to write there; it is not an unusual thing for magistrates at the Tombs to take bail for persons committed at the Court of General Sessions; in the manner in which the bail was taken, there was nothing, in my mind, the least suspicious.

*Robert Johnson*, on behalf of the prosecution, testified as follows: I have been a police clerk for six years; I have generally acted at the Tombs; Justice Bogart has been four years in office; Nesbitt was the clerk there from ten A. M. to two P. M.; during that time I was at the Mayor's office; my impression is I was not at the Tombs; I was not at the Tombs when the bail was taken; the clerks at the Tombs were Mr. Nesbitt and sometimes myself; I was shown the recognizance in question by Justice Bogart; he said he had taken it in a case where the party had been committed by Recorder Smith, but he thought he had the right to take the bail; I told him I thought he had no right to take it unless

he had a notice from the District Attorney; I do not recollect any further conversation, except that I told him the prisoner was known to be a notorious pickpocket, and that he should be cautious; it is the general custom for police justices, in taking bail for indictments, to consult the committing officer or the district attorney.

*Cross-examined* by counsel for defence: Officer Patterson used to take down examinations at the Tombs Court in the place of the regular clerks; others assisted the magistrate in taking examinations and making out papers; I did not see the party who offered bail in this case; frequently axaminations are going on in two or three rooms at once.

*James Nesbitt,* called as a witness for the prosecution, testified as follows: I was a police clerk at the Tombs last summer; I had no conversation with Judge Bogart on the subject of bailing Nambe; I was not present at the time.

*Cross-examined* by counsel for defence: It often happens that the clerks are called away on business, and that officers are required to write bonds for them; I have known counsel to fill up a bond himself; it would not be unusual for Mr. Magnus to fill up a bond, as he did in this instance.

*Francis Spicer,* on behalf of the prosecution, testified as follows:

The District Attorney here offered to prove by the witness that he, the witness, had made search for the said Porkousky at 278 Houston-street, in this city, and other places, and was unable to find him the said Porkousky.

This evidence and each and every part thereof was objected to on the ground that it was inadmissible under the indictment; also on the ground that it was in any event incompetent as against the defendant, unless it was shown that defendant was aware, at the time he took the said bail, he the said Porkousky did not reside at the place above mentioned. The court admitted the evidence, and the counsel for the prisoner excepted.

The People *v.* Bogart.

*Examination resumed.* I was attached to the district attorney's office during last summer; I went to No. 278 Houston-street to search for Mr. Porkousky, the bail in this case; I did not find Porkousky, or any person of a similar name, neither at 278 Houston-street nor anywhere in the neighborhood; I could not find that he had ever lived there.

Counsel for defence said that the defence had also made strenuous exertions to find Porkousky, and had failed, and he was willing to admit that he was not what he represented himself; he was also willing to admit that the party had been bailed without notice to the district attorney, and that the Court of Sessions had adjourned at the time bail was taken.

*Cross-examined by counsel for defence.* When I have arrested parties on bench warrants from the Court of Sessions, I have often taken them before the police magistrates after the Court of Sessions had adjourned.

The District Attorney here read a letter dated August 5, 1856, calling Judge Bogart's attention to the matter, and also the original affidavit taken before Justice Bogart upon which Lambe was committed by him.

The prosecution having rested :

*James Martin* was called for the defence, and testified as follows : Judge Bogart called on me, and told me to use all exertions to have Nambe rearrested, and if he was rearrested he would give a reward; this was about middle or latter part of August, 1855.

*Ralph Patterson,* for the defence, testified as follows : I am attached to the Tombs Police Court; I remember the bail being taken in this case; I was present when one of the affidavits was taken; I saw the man who was bailed; I tried to find him at Judge Bogart's direction; the judge told me to look out for him and arrest him; this was about five days after the bail was taken.

*By District Attorney.* I was not told to look after Porkousky.

*By counsel for defence.* It is very common at that court for the magistrates to be so much engaged that three or four clerks and police officers have to write for them; it is a common thing for the sitting magistrate to have examinations going on in one room while he has to go to and fro into other rooms to answer questions.

*Stuart J. Smith,* on behalf of the defence, testified as follows: I have been a police officer for eight years; I was at the Tombs Court last summer, after the bail was taken in this case; Judge Bogart gave me orders to rearrest the man Nambe; I was sergeant of a police squad, and he told me to instruct my men to arrest him; I think he told me to rearrest about a week after the bail was taken; I was an officer of Judge Bogart's court, and considered his orders in this respect, and in any other, binding upon me; I made every exertion personally, and through the policemen under my charge, to rearrest Nambe, but failed to find him.

The counsel for the defence and prosecution respectively summed up the case to the jury, after which Judge Capron charged the jury as follows:

*Gentlemen of the jury:* Notwithstanding a long time has been occupied in the trial of this cause, I do not myself think that it involves any principles that are abstruse. The facts are but few, and the law that applies to them is, in my judgment, very simple. Before I begin to state what appears to me to be the law of the case, it is, perhaps, proper that I should repeat what I said upon the trial of a cause at the last term of this court, which is somewhat similar in its character: that this is not the most serious offence that a man can be charged with; it does not involve his life, but it does his reputation to a considerable extent. It may involve his liberty, and may affect his political prospects, inasmuch as it affects his general character, and it is therefore highly important that you should weigh the facts can-

The People *v.* Bogart.

didly and carefully. You should not come to any hasty conclusion, but fairly weigh all the testimony in the case, and give every circumstance in favor of the defendant its full weight; because a citizen who has stood well in the community, who has been clothed with public office, and intrusted with the enforcement of public justice, is presumed to have held a good position in society, and he should not be struck down from that position except upon very clear evidence. It is of no use laboring to acquire good character and an honorable standing in society if a very little evidence, something that perhaps a party cannot explain at the moment, is to strike him down and destroy his prospects forever. You should, therefore, in this case, when you retire to consult with each other in respect to it, give to the defendant the benefit of every presumption in his favor. But there is another rule which it is your duty to observe. You should not allow your sympathy for the defendant, at the same time that you are anxious to give him the benefit of every doubt, and full weight to every piece of evidence that bears in his favor, to blind you to the real state of the case, because the public, gentlemen, have an interest in this question as well as he. The public have intrusted him with the exercise of certain duties for the public benefit and safety. He is a criminal officer. He is appointed, as it were, between the public and those who violate the law, for the protection of the public. His duty is to see that those who are brought before him suspected of crimes, and especially if they are indicted, are not let loose upon the community, under circumstances which may lead to their escaping trial and escaping justice, and those who become bail for them suffer nothing, because they are worth nothing.

At the same time that you regard all the rights of the defendant, and give him the benefit of all the doubts that exist in your minds as to the question of his guilt, you will remember that you are also the guardians of the public; and if the case is clear, if it is so clear that you have no reason-

able doubt upon the question of his guilt, you should allow
no sympathy that you may have for him to prevent you from
finding him guilty, because the betrayal of an official trust
is one of the most heinous crimes that can be committed.
We frequently do not think it is.  We think it is a small
matter when judicial or executive officers, who are intrusted
with official acts, accept a bribe, or from corrupt motives
let a prisoner run at large; but it is a very serious charge.
A man may occupy but an humble office, and his derelic-
tions of duty may not be very serious; yet when the public
once get accustomed to that kind of conduct upon the part
of public officers, some other official, who has high public
interests intrusted to his charge, may, by-and-by, violate his
duty, and the community may feel seriously the effect of his
conduct and the danger of intrusting power to men who do
not deserve it.  The governor of the state, or some high
judicial officer of our courts, may, if the public become
insensible to the importance of judicial duty and fidelity,
commit some great wrong, and hence it is just as important
that fidelity in public office should be exacted among the
lowest grade of officers in the state as it is among the highest.
Therefore, gentlemen, when you come to consider this case,
do not let any sympathy for the defendant deter you from
finding him guilty of the crime imputed to him, if you have
no reasonable or intelligible doubt that he is guilty.

Here is another *consideration* : I mention it because the
jury, that I had reference to when I mentioned the other case,
canvassed the question (as I heard since) how much pun-
ishment should be inflicted upon the defendant if found
guilty.   That was an improper inquiry.   It gave to the court
as well as to every one else the idea that the jury thought
he was guilty, and only refused to find him so because they
did not know his punishment.   That, gentlemen, is not a
question for you, but one entirely for the court.   If the de-
fendant should be found guilty, the punishment cannot extend
beyond a year's imprisonment in the county jail and a fine

The People *v.* Bogart.

of $250; but it may run as low as one hour's imprisonment and a fine of one cent. The court have the discretion of inflicting a fine from one cent up to $250, or imprisonment from half an hour up to one year; and it is fair to be supposed that the court, in the exercise of a proper judgment, will always apportion the punishment to the circumstances of each particular case. The jury should therefore have no regard whatever to that consideration, leaving to the court the exercise of the discretionary power which the law has confided to it, confining themselves to the mere determination of guilt or innocence. Now, gentlemen, the defendant here is proved to be a police magistrate; a very important officer in this community, and one who has more to do with the administration of justice, so far as the public peace is concerned and the safety of citizens, than any other class of officers in the city; therefore, it is highly important that they should be intelligent and honest. The people charge him under the thirty-ninth section of the statute, which reads: "Where the performance of any act is prohibited by any statute, and no penalty for the violation of such statute is imposed, either in the same section containing such prohibition or in any other section or statute, the doing such act shall be deemed a misdemeanor." In other words, the act is a misdemeanor, whether committed by an officer or anybody else who is prohibited by law from doing that act. Now, it cannot make any difference whether the individual is an officer or a private citizen; because if an officer does an act beyond his jurisdiction, and therefore contrary to law, he cannot be said to do it officially, and therefore it is out of his office. An officer has two relations: he is a private citizen and an officer. What he does in his official capacity, and within his jurisdiction, he does as an officer, but what he does not in his official capacity, or where he has no jurisdiction, he does not as an officer. Therefore, in my opinion, the act covers the case of an officer as well as of a private individual, upon the ground that what

he does, if forbidden by law, is not an official duty at all, any more than if done by a man who did not hold the office. When the performance of an act is prohibited by statute, it is a misdemeanor, and the person committing it is liable to the punishment I have stated. Now, the people say that the defendant violated this law, which says : "No officer, other than the committing magistrate, shall let to bail any person charged with a criminal offence, unless notice of the application to bail such person shall have been given to the district attorney of the city and county of New-York, at least two days before such application, specifying the name of the officer, the time and place when and where such application will be made, and the names and residence of the proposed bail, and the original commitment and proofs upon which it is founded, shall have been presented to the officer to whom application for bail is made." Gentlemen, you can see the great propriety of this law. In this city there are many committing magistrates. A warrant is issued; the criminal is brought up before a committing magistrate, who takes his examination and commits him to prison. If application is made to that same individual to let him out on bail, he can judge whether he should be let to bail, and in what sum. He knows the history and character of the case, and therefore, in law and in fact, is better able to judge of the proper amount of bail which should be taken, and who would be good bail, than any magistrate who had not had the case before him. A great deal of evil resulted in this city from magistrates committing persons charged with a crime, and then the friends of the prisoner going to another justice, who was a perfect stranger to the case, and giving bail in perhaps a nominal sum, when the offence was one which required bail to be taken in a large amount ; and it may be he omitted to go before the officer who committed him because it was such a case, and they wanted to get off more easily. That is the reason why the statute was passed, and it is an important act. "No officer shall let to bail."

The People *v.* Bogart.

That is a complete prohibition on every officer except the magistrate who committed the individual to prison, unless notice is given to the district attorney, and unless the officer to whom the application is made has the original commitment and proofs before him, to look at, upon which the prisoner was arrested by the other magistrate and committed to jail. The reason of this provision is, that it may often happen that the same officer who committed the prisoner may be away, sick or dead; and it will therefore be necessary, from various causes, to go before some officer who did not cause the arrest to be made. But this statute provides that no other officer shall do it, unless the district attorney has two days' notice of the fact, so that he can look into the case and understand it, and unless the original papers upon which the arrest and commitment were made are brought before the officer to whom the application is made for bail. These papers inform the officer what is the nature of the case, and he can act intelligently. This statute, therefore, prohibits any officer the right to take bail where another officer has made the commitment, without these papers are presented; and my construction of the law is this: that although an officer like Mr. Bogart may have general authority to let to bail, yet this statute gives him no jurisdiction over a case, which another officer originally had, without the production of the papers upon which the arrest was made, the complaint, and the proofs. If he does not get them, he has no more jurisdiction over a party or a case than a common justice of the peace has, who undertakes to render judgment against a man without a summons issued and returned duly served. He is prohibited from doing the thing until these papers are produced. If he does it, therefore, he does it, not as a justice, because he has no jurisdiction in the case as a police justice, without the possession of these papers in the first place; he does it as a private individual, and any other man has just the same right he has to let to bail. The bail taken probably

PAR.—VOL. III.                    21

would be good, and the person who became bail would be held. But that is a question I have not heard agitated, and do not know that it has been decided. All that, however, is no answer to the question whether he had any right to act at all, so far as he is concerned, when he is called to account for what he has done contrary to the statute. Now, the people say that this officer, on the twenty-eighth July last, let to bail a prisoner, whose name has been mentioned to you, and who had been previously, upon the eighteenth day of the same month, consigned to prison under a commitment issued by Recorder Smith. If the charge presents a case precisely within the eighth section, Recorder Smith committed the man to prison. The papers were upon file. The defendant is charged with having let him to bail without giving any notice to the district attorney upon the subject, and without having before him the necessary papers to give him jurisdiction in the case. He had the commitment, and not the proofs; but the statute is not satisfied without the whole. The commitment was not a matter of much importance, so far as taking bail was concerned; but the proofs, to give the officer a knowledge of the case, were the great things required. It is not denied, I believe, gentlemen, that Mr. Bogart did this act. They admit that he issued a warrant against the same man, who was brought up before him upon a complaint made before him. Now, he had a right to take that complaint and the examination, and, if the case was made out, he had a right to let him to bail without giving any notice to the district attorney, because it was a case where he himself had caused the arrest. The complaint had been made before him, and therefore that was not a case coming within this section. Under the complaint filed before him, and under the warrant issued by him, he had a right to bring this man up, hear his case, commit him to prison, or let him to bail. But the charge is, that when application was made to let him to bail, it was not upon his case only, but upon Recorder Smith's, and the charge is upon that act,

The People *v.* Bogart.

an exercise of power with which he was not clothed, in taking bail of this man and setting him at liberty. And further, it is urged that this bail was what is called straw bail; in other words, that the bail had no real estate, that there was in fact no such man, and that he was not to be found. That circumstance, however, is not material, any further than to show the general nature of the whole transaction; it does not form an element in the offence.

In coming to a conclusion, gentlemen, upon the guilt or innocence of Justice Bogart, a great deal has been said by the counsel upon both sides as to what was necessary to constitute guilt. My own opinion is, and I think it is borne out by the authorities, that where an act is forbidden and a party does that act, he is guilty of the offence, he is guilty of a misdemeanor; that it is not necessary, under this statute, to prove corruption, even in the case of a public officer, charged with doing an act without having acquired jurisdiction in the ordinary literal acceptation of the term as we understand it; but, if he intended to do the act, his intention constitutes all that is necessary to be proved. If a man does an act intentionally, he does it willfully. Intention means will. When I intentionally do a thing, I do it because I will to do it. If this were a judicial act, then I think it would be necessary to show something further than just the doing of the act. But it is a ministerial act. The whole of Justice Bogart's duty, until he had acquired jurisdiction, was ministerial; like a justice issuing a summons and having it returned to him with the proper return indorsed. That is a ministerial and not a judicial act. His judicial duty did not commence until he could entertain the question of bail. He could not legally entertain that question until he got the papers, because the statute says he shall not act until he gets them. Then he cannot do a judicial act until he gets the papers. The act for which Justice Bogart is indicted is, taking bail without the prior performance of a necessary jurisdictional ministerial act. It is a general

rule that, when a public officer is indicted for misbehavior in his office, and when the act done is clearly illegal, it is not necessary, in order to support an indictment, to show that it was done with corrupt motives. Nothing can be plainer. The question is, was this a judicial or a ministerial act? I charge you, gentlemen, that it was wholly ministerial; that all his acts are ministerial until he acquires jurisdiction in the case, and he does not acquire jurisdiction until he has before him all the papers which the eighth section requires before his right to act attaches. That is too plain to admit of any doubt. Here we have the law where the act was illegal, and certainly it was illegal for him to take bail without having these papers and giving this notice. Where it is illegal, the proof of doing the act is evidence of a bad motive, and constitutes the offence. The question may arise, whether the defendant has the right, by proof upon his part, to show that he had no bad motive. The question for the jury is, was it illegal for him to take this bail without having these papers? Did he do that act? You will remember, gentlemen, that Justice Bogart has for several years been a judge, and these statutes he must have had occasion to know all about, for they concerned his everyday duties. It may be that he was unaware of the full force of this statute. It may be that he did not understand it; and that you may take into consideration, under all the circumstances, if there is any evidence tending to prove that fact, with the view to rebut the presumption of bad intention, arising from the doing of the act.

You will remember, by Mr Johnson it is proved that, shortly after that act, he mentioned the fact to Mr. Johnson, stating that he had let this man to bail. Johnson told him he thought he had done wrong, but he (Bogart) thought he was right. It is for you, gentlemen, to say, from the fact of Bogart mentioning this to Johnson, whether you may infer it had been the subject of conversation before. Johnson says, " I think you have done wrong." Perhaps he may

The People *v.* Bogart.

have talked the matter over before. Whatever you find upon that subject, it is submitted whether that is not evidence of an understanding, upon the part of Mr. Bogart, about this law; whether it is not evidence that he knew the law; whether he had not taken upon himself the responsibility of acting upon his own judgment, notwithstanding the law. That is for you to say.

Gentlemen, as I said before, if the counsel for the defendant have made any impression upon your minds favorable to the defendant, I, having told you what the law is, say (and I will make no comment upon the evidence which shall in any degree shake any impressions which the counsel for the defendant may have made), give him the benefit of those impressions. I will give to the defendant the full benefit of a jury trial. Let the jury be the sole judges of his guilt or innocence, without any remark of mine upon the facts of the case. But it is my duty to tell you what the law is, and I have commented upon the facts only just so far as was necessary to show and to explain to you what the law is, and to apply it to the case. My opinion is that it is not necessary for the people to show anything out of the case in order to make out corruption or bad faith. That it being the doing of an official act, without the prior performance of a jurisdictional ministerial act, the fact that the act was illegal, that the officer was prohibited from doing it, except under certain circumstances, renders him chargeable with a knowledge of that law, and that if he did the act, the doing of the act is evidence of all the intent that is necessary to be proved by the people. If he has proved anything here that in your judgment would show that he, notwithstanding the legal presumption of intention, acted honestly and did not mean to do wrong, you may take that into consideration to rebut that presumption; but in doing that you must be careful not to allow any of the facts of the case which go to make up the essence of this crime to be lost sight of. Take the case, gentlemen; look at the facts candidly, in view of what I have

said in reference to the defendant. Give him the benefit of every doubt resting in your minds; but at the same time that you do that, do not let your sympathies run away with your judgment, and lead you to aquit him in a case where, upon a full examination of the facts, and giving them all their true weight, he ought to be convicted, because the public have rights, and each of you are interested in the question as well as the defendant.

The counsel for the defendant excepted to that portion of the charge of the court in which it was stated that section thirty-nine of 2 *Revised Statutes* (*p.* 696) applied to the case of public officers. The counsel for the defendant also excepted to that portion of the above mentioned charge in which the court charged that the defendant acquired no jurisdiction of the case pending before him, on the application for bail, unless all the papers mentioned by the statute were before him.

The counsel for the defendant also excepted to that portion of the charge in which the court stated that where the performance of any act was forbidden by statute and a party does that act he is guilty of a misdemeanor.

The counsel for the defendant also excepted to that portion of the charge in which the court stated that the doing of the act stated in the indictment was sufficient proof of intention to sustain the prosecution.

The counsel for the defendant also excepted to that portion of the charge where the court stated that it was not necessary, in order to sustain the indictment, to prove corruption.

The counsel for the defendant also excepted to that portion of the charge in which the court stated that the act in question, to wit, the taking of bail without proof of service of the required notice and without the production of the required proofs, &c., was not a judicial act, and that judicial action did not in this case commence so as to shield defendant,

without proof of corruption, till he acquired jurisdiction under the statute.

The jury found the defendant guilty. The proceedings being stayed on the conviction, on a certificate of probable cause by the city judge, a writ of *certiorari* was issued.

*Henry L. Clinton,* for the defendant.

I. The court erred in admitting evidence to prove that Porkousky (the bail) did not reside at 278 Houston-street; Porkousky, in his affidavit before the justice, swore that he resided at 278 Houston-street. There is no proof or pretence that Justice Bogart, at the time he took the bail, knew the fact to be otherwise.

II. The court erred in charging that the defendant acquired no jurisdiction of the case pending before him, on the application for bail, unless all the papers mentioned by the statute were before him. 1. That the defendant had jurisdiction sufficiently appears from 2 *Revised Statutes* (*p.* 893, § 31, *subd.* 4, 4*th ed.*), which reads as follows: " The police justices in the city of New-York shall respectively have power to let to bail in all cases where the judge of the Court of General Sessions in said city is authorized to let to bail." That the Court of Sessions had jurisdiction to let to bail under the circumstances which surrounded the case in question when Justice Bogart " let to bail," will not be disputed.

III. The court erred in charging " that the act in question, to wit, the taking of bail without proof of service of the required notice, and without the production of the required proofs, &c., *was not a judicial act.*" 1. It is absurd to say that the act of a judge in deciding on the sufficiency of papers before him, in reference to the question whether a prisoner shall be let to bail, is not judicial, and that, too, even though the motion for bail ought to be denied. Surely a judicial decision is none the less judicial because it should have been rendered the other way. As well might it be said that were

a judge of the Supreme Court to grant an order of arrest in a civil case, and yet, upon a motion for that purpose, vacate his own order of arrest on account of the insufficiency of the affidavit on which it was granted, as that the decision of the judge granting the order was ministerial, while the decision of the same judge vacating the order was judicial because the first decision was bad and the last good law. ( *Horton* v. *Auchmoody*, 8 *Wend.*, 200–2; *Tompkins* v. *Sands*, *id.*, 462, 466, 469; *Harman* v. *Brotherson*, 1 *Denio*, 537–40; *Paine* v. *Barnes*, 5 *Barb. S. C. R.*, 465; *Weaver* v. *Diefendorf*, 3 *Denio*, 117–19.

IV. The court erred in charging that, in order to sustain the indictment, it was not necessary to prove corruption. The gist of the offence charged in the indictment is corruption. 1. The case of the *People* v. *Brooks* (1 *Denio*, 457), which probably misled the learned judge below, was an indictment for neglect of duty in not performing a ministerial act, to wit, swearing a witness. The court (Beardsley, J.) expressly says: "The offence charged is not the neglect of a judicial duty, but of one purely ministerial, which the officer was absolutely bound to perform, and had no discretion or right to decline;" thus distinctly recognizing the doctrine for which I contend in the case at bar. 2. In the case of *The People* v. *Coon* (15 *Wend.*, 227), which was the case of a justice of the peace indicted for not taking sufficient sureties for the appearance of a person brought before him charged with a criminal offence, the court (Bronson, J.) recognized the same doctrine. The court say: "There is nothing in the objection that justices of the peace are not liable to be indicted for misbehavior in their office. Whenever they act partially or oppressively, from a malicious or corrupt motive, they may be punished criminally." On page two hundred and eighty-one, the court held the following language: "The only offence of which the justice could have been guilty was that of discharging Goff, without taking sufficient sureties or requiring bail in a sufficient sum to secure his personal

The People *v.* Bogart.

appearance to answer any bill that might be found against him by the grand jury ; *and even such an act would not be criminal, unless it were done from a corrupt motive and with intent to pervert the course of justice.*" 3. In the case of *The People* v. *Norton* (7 *Barb. S. C. R.*, 477) this doctrine is considered. The court (Willard, J.) say : "But the rule, that a judge is not indictable for an error in judgment, extended at common law only to judges in courts of record, and not to ministerial officers." But the common law has not clothed them with the same immunities as it has courts of record, except in those cases where they act purely in a judicial capacity. As they cannot be impeached for corruption, they may be indicted. In England, the proceeding against them is either by information in the King's Bench, or by indictment; and Lord Tenterden, in *The King* v. *Borron*, (3 *Barn. & Adolph.*, 452), observes, that whenever their conduct is sought to be questioned, either by information or indictment, the question has always been, not whether the act done might, upon full and mature investigation, be found strictly right, but from what motive it had proceeded, whether from a dishonest, oppressive or corrupt motive, under which description fear and favor may generally be included, or from mistake or error. In the former case alone they have become the objects of punishment. (12 *John.*, 356.) The same doctrine precisely is laid down in 1 *Russell on Crimes* (*p.* 136) ; also in 1 *Chitty's Criminal Law,* (*p.* 873). In *Wharton's American Criminal Law* (*p.* 732, 2d ed.), the following language is used : "A justice of the peace is indictable for misbehavior in his office when he acts partially, or oppressively, or from malicious or corrupt motive."

V. The Court erred in the following particulars : First. In charging that section thirty-nine applied to the case ; Second In charging that where the performance of any act is forbidden by the statute, a party who does that act is guilty of a misdemeanor ; Third. In charging that the doing of the act stated in the indictment was sufficient proof of

intention to sustain the indictment. The language of the charge, in this particular, is as follows : " Where it (the act) is illegal, the proof of doing the act is evidence of a bad motive, and *constitutes the offence.*" Fourth. In refusing to charge each of the ten propositions which the court was requested to charge *seriatim* by prisoner's counsel.

*A. Oakey Hall* (District Attorney), for the people.

I. The only evidence objected to is that tending to show that the surety taken by Bogart was worthless. 1. Now this was admissible as a fact growing out of the *res gestæ ;* a consequence of an act which the defendant did. 2. The subsequent admission covers any error. which may have occurred in admitting the testimony. And see charge of the judge on this point. 3. If the bail had been very good, instead of very bad, under the law contended for by defendant before the judge below in charging the jury, his counsel would have thought it hard not to have been allowed evidence showing that the bail was good, and no injury done to the people.

II. The defendant acted without jurisdiction ; he acted illegally ; he acted intentionally, and, therefore, willfully ; and the willful doing of the prohibited act satisfies the verdict of guilty, no matter whether the act was done honestly, or with *good intentions,* or was not corrupt, or is not productive of any injury ; and the allegation of corruption is mere surplusage, and may be rejected. 1. All magistrates and judges who have power to let to bail are called officers. ( 2 *R. S., p.* 893, § 31, *4th ed.*) 2. Police justices, prior to 1833 (*Laws of* 1833, *ch.* 11, § 9), had limited jurisdiction as to admitting to bail. (1.) After 1833, they possessed powers equal to those of the judges of General Sessions. (2.) But they never had legal authority to bail any persons except those brought before them charged (that is, preliminarily before them as charged) with crime. (3.) The judges

of the General Sessions could issue writs of *habeas corpus*, and thus acquire jurisdiction of the persons in order to bail them; but a police justice had no power to acquire jurisdiction over a person, except by issuing a warrant against him. The statute says, in enumerating justices, " officers before whom persons charged with crime shall be brought." 3. The statute giving the police justices power to let to bail, in all cases where a judge of the Court of General Sessions is authorized by law to let to bail, was a statute merely extending their power to certain felonies whose punishment exceeded five years. (1.) That is, they have power to bail in all cases wherein they have jurisdiction. (*Commonwealth* v. *Canada*, 13 *Pick.*, 88–90; *Petersdorf on Bail*, 513.) 4. But whether this be so or not, in 1846 came a statute qualifying the jurisdiction of all officers in letting to bail, which is recited in the indictment. This act is in spirit taken from divers English statutes. (*Id.*, 507.) 5. Before 1833, no police justice could bail unless the prisoner was charged with an offence whose maximum of imprisonment was five years. After 1846, no police justice (among other officers) could bail unless he were committing magistrate, or unless certain formalities had been complied with to give him jurisdiction. The law prior to 1833 has a prohibition by implication, or more properly by a negative growing out of an affirmation. That of 1846 was a positive prohibition. The concurrent statute made the doing the act thus under a prohibition a misdemeanor. It was analogous to the statute of *5th Edward III.* (*ch.* 8), whereby the marshal of the Queen's Bench was prohibited from bailing persons indicted of felony on pain of half a year's imprisonment. (1.) Judge Bogart had jurisdiction of the person of William Lawson by virtue of his own warrant and commitment; but of William Lambe, who happened to be the same man, and who was committed by another magistrate, he had not, because the requisites of the statute to confer jurisdiction had not been complied with. (2.) Yet he willfully bailed without his

jurisdiction; because the evidence shows that "he thought he had a right;" and thus acted with knowledge as to the question of power. Even if he had acted ignorantly, he would have been no better off in his legal *status*. (*The People* v. *Brooks*, 1 *Denio*, 457; *Dwar. on Statutes*, 677; *Saintsbury's case*, 4 *T. R.*, 457; *Yates* v. *Lansing*, 5 *John.*, 282; 1 *Gabb. Cr. L.*, 780; *Bacon's Abr.*, "*Bail*," 595; *The People* v. *Lohman*, 1 *Comst.*, 379; 2 *Mass.*, 120, 410.)

III. But the circumstances abundantly show malice and oppressiveness to the people, savoring of corruption. 1. The accumulation of offence by the man bailed. 2. The aliases of the man bailed. 3. The employment of one not a clerk to aid the magistrate. 4. The undue haste used. 5. The suspicious character of the bail offered. 6. Making the bail on the second charge less than that upon the first; and reducing the bail from $1000 to $500 on his own commitment. 7. The prisoner was a notorious pickpocket.

IV. The charges requested from the court were either not warranted by the evidence, or were redundant, and were, therefore, properly ignored. (*Carpenter* v. *Stillwell*, 1 *Kern.*, 79; *City of New-York* v. *Price*, 5 *Sandf. S. C. R.*, 542.) 1. Catechising the judge is disfavored. (*Bulkeley* v. *Keteltas*, 4 *Sandf. S. C. R.*, 455.)

*By the Court*, ROOSEVELT, J.— The defendant Bogart was indicted by the grand jury for a misdemeanor in violating his duty as a police justice, by unlawfully letting a prisoner to bail without authority, and without notice to the district attorney. The surety, it appears (one Joseph Porkousky), turned out to be "not what he represented himself;" and when his presence was needed, the usual case of what is denominated straw bail, neither he nor his principal was to be found. On the trial of the justice, which took place in February last, before the Court of Sessions, for the alleged misdemeanor, the jury, after a short consultation, under the charge of the city judge, returned a verdict of guilty. Sundry

exceptions were taken to the charge; and on these exceptions the case is now brought before the general term of the Supreme Court for review.

The principal point made by the defendant's counsel on the argument was, that the court below erred in charging the jury that in order to sustain the indictment it was not necessary to prove corruption. We think the court were right. No such proof is required. The law says (2 *R. S.*, 696, § 39), that "where the performance of any act is prohibited, &c., the doing such act shall be deemed a misdemeanor." It does not say the doing such act corruptly, but the doing it shall constitute the offence. Every citizen, and especially every police justice, is presumed, in such cases, to know the law, and when he does an act which the law prohibits he is presumed to intend to do it, and, as a consequence, to intend to break the law. The allegation, therefore, in the indictment, that the defendant "did willfully, maliciously, unlawfully and corruptly do an act prohibited by law," is a mere legal conclusion. They are formal words, inserted more to give solemnity to the instrument than for any other purpose.

That Justice Bogart was not the committing magistrate, in the complaint of Miller against Lawson, appears from the recognizance taken by him. He, of course, knew that he was not. The warrant for that offence was before him, signed, not by him, but by the recorder. He knew, he certainly was bound to know, that the statute (*Laws of* 1846, 408) expressly declared that "no officer other than the committing magistrate should let to bail any person charged with a criminal offence, unless notice of the application to bail such person shall have been given to the district attorney." He knew that Nambe, *alias* Lambe, *alias* Lawson, the alleged thief, was not only charged but indicted. All this appeared in Recorder Smith's commitment, and in the recognizance signed by himself. He knew, also, that the district attorney was not apprised of the intended application. In bailing

the prisoner, under these circumstances, he could not help knowing that he was doing an act which the law expressly prohibited his doing. He was acting, therefore, intentionally, willfully, or, in legal parlance, "corruptly." The expressions as thus used, not an uncommon ·occurrence in legal documents, are synonymous. They have the same meaning as in a plea of usury alleging that the party "willfully and corruptly" exacted more than seven per cent. The offence imputed to the officer was the doing of an unlawful act knowingly. In such case, as the judge below expressed it, "the proof of doing the act is evidence of a bad motive, and constitutes the offence." It may be that the party accused would have the right to rebut the inference. The defendant has not done so. He has not attempted to do so. The judge, moreover, instructed the jury that, "If there was any evidence tending to prove that fact (namely, a misconception of the full force of the statute), with the view to rebut the presumption of bad intention arising from the doing of the act," they might, "under all the circumstances, take it into consideration." He further expressly charged the jury, "That if the defendant had proved anything which in their judgment would show that, notwithstanding the legal presumption of intention, he acted honestly and did not mean to do wrong, they should take that into consideration to rebut the presumption." It seems to me this was all the court could be asked to say; and the verdict, therefore, under such a charge, must be understood as a finding by the jury that the wrong done was not the result of honest mistake. To call such an act judicial, and therefore, like other judicial errors, exempt from indictment, would be to repeal the statute : I mean the statute which prohibits magistrates from thus, *ex parte*, interfering with, and, in effect, nullifying each other's commitments. With such a construction, error of judgment would be the universal plea, and acquittal the universal result.

Judgment affirmed.